[Cite as *Molzon v. Molzon*, 2022-Ohio-1634.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| BERT MOLZON, | CASE NO. 2021-A-0024 |
| Plaintiff-Appellee, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| JEANNE MOLZON, | |
| Defendant-Appellant. | Trial Court No. 2015 DR 00055 |

**O P I N I O N**

Decided: May 16, 2022
Judgment: Affirmed in part and remanded

*Cory R. Hinton*, Hanahan & Hinton, LLC, 8570 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellee).

*Joseph G. Stafford* and *Nicole A. Cruz*, Stafford Law Co., LPA, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114 (For Defendant-Appellant).

*Edith M. Jonas*, P.O. Box 684, Andover, OH 44003 (Guardian ad litem).

MARY JANE TRAPP, J.

{¶1} Appellant, Jeanne Molzon ("Ms. Molzon"), appeals the judgments of the Ashtabula County Court of Common Pleas that overruled her objections and adopted the magistrate's decision that terminated the parties' shared parenting plan, granted custody to appellee, Bert Molzon ("Mr. Molzon"), and terminated Mr. Molzon's child support obligation.

{¶2} Ms. Molzon raises four assignments of error on appeal, contending that the magistrate (1) erred in denying her motion to continue after her counsel was granted leave

to withdraw the day before trial, (2) failed to find a change of circumstances before granting Mr. Molzon's motion to terminate shared parenting and designating him as the sole residential parent and legal custodian of their two minor children, (3) failed to consider the best interest factors under R.C. 3109.04(F), and (4) erred in terminating Mr. Molzon's child support obligation.

{¶3} After a careful review of the record and pertinent law, we find Ms. Molzon's first three assignments of error to be without merit. Firstly, Ms. Molzon failed to demonstrate prejudice from the magistrate's ruling denying her motion for a continuance and/or offer any additional evidence or testimony that would have likely changed the outcome of the hearing on the motion to terminate shared parenting.

{¶4} Secondly, the magistrate was not required to find a change in circumstances before terminating the shared parenting plan. R.C. 3109.04(E) requires only a finding that doing so is in the children's best interest. Thirdly, there is no requirement that the magistrate explicitly state the factors of R.C. 3109.04(F). A plain reading of the magistrate's findings and decision gives no indication that the magistrate failed to consider the nonexclusive list of R.C. 3109.04(F) factors.

{¶5} Lastly, regarding Ms. Molzon's fourth assignment of error as to the termination of child support, we remand this matter to the trial court because it appears from the record before us that the trial court did not complete and file a child support worksheet, inasmuch as no financial information was submitted. Thus, we have nothing before us to review, and any determination regarding the trial court's termination of child support would be premature.

2

**{¶6}** We affirm the judgments of the Ashtabula County Court of Common Pleas in part since we dismiss Ms. Molzon's fourth assignment of error as unripe and remand to the trial court to determine the parties' child support obligations.

## Substantive and Procedural Facts

**{¶7}** In 2017, the Ashtabula County Court of Common Pleas granted the parties a divorce in which the parties agreed to a shared parenting plan for their two minor children, R.M., born in 2006, and J.M., born in 2011.

**{¶8}** Several years later, at the start of the COVID epidemic in January 2020, Mr. Molzon filed a "Motion to Terminate the Shared Parenting Plan and Modify Mother's Time." At the time the motion was filed, Ms. Molzon had the children from Monday until Wednesday and every other weekend, and Mr. Molzon paid a child support obligation of $1,697.66. In his affidavit attached to his motion, Mr. Molzon attested that he and Ms. Molzon were having problems with their older daughter's schooling, as well as difficulty communicating, and that it would be in the children's best interests that shared parenting be terminated and he be designated the residential parent and legal custodian.

**{¶9}** Mr. Molzon filed several other motions, including a motion for a guardian ad litem ("GAL") to be appointed for the children and a motion for the parties to communicate via Our Family Wizard ("OFW"), a mobile application for co-parenting that facilitates and tracks communication, helps coordinate child duties, and stores important information. He also filed a motion seeking an independent psychological investigation due to Ms. Molzon's alleged erratic behavior and confrontations she was having with their daughter, R.M. Finally, Mr. Molzon sought an emergency ex parte motion to suspend Ms. Molzon's parenting time and an ex parte emergency motion to enroll R.M. in online schooling.

3

Case No. 2021-A-0024

{¶10} The magistrate issued an ex parte order granting Mr. Molzon's emergency motion to suspend Ms. Molzon's parenting time, finding it was in the best interest and welfare of the minor children. Mr. Molzon's emergency motion to enroll R.M. in online schooling was also granted.

{¶11} The magistrate held a full hearing, during which the parties reached an interim agreement that included a new parenting schedule providing Ms. Molzon parenting time with the children every other weekend and additional parenting time after school on Mondays, Tuesdays, and Wednesdays with their son, J.M. The parties also agreed to communicate via OFW, and a GAL was appointed.

{¶12} At a pretrial several months later, the parties agreed to adjust their parenting time with the children on an alternative week on/week off schedule, and the trial was continued in order to allow the GAL time to speak with the children since their meeting was delayed due to restrictions associated with the COVID epidemic.

{¶13} At the final pretrial, the parties agreed that both children would undergo complete mental health evaluations.

### Motion for a Continuance

{¶14} On the day before trial, Ms. Molzon, pro se, filed a motion requesting a continuance because she terminated her attorney and was seeking new counsel. On the same day, the trial court denied the motion and granted her attorney's motion to withdraw. On the day of trial, Ms. Molzon orally moved for a continuance due to her counsel's withdrawal:

4

{¶15} "[The Court]: Yesterday, prior to the hearing, Ms. Molzon's attorney of record was allowed to withdraw because the filing indicated, Ms. Molzon, that you had terminated her services, correct?

{¶16} "[Ms. Molzon]: Oh, sorry. Yes.

{¶17} "[The Court]: Okay. You filed then a motion for an emergency continuance. Actually, it wasn't a motion. It was a letter to the Court that was improperly served on the parties. The Court did consider it, though, considering the circumstances, and denied the motion. You have another motion?

{¶18} "[Ms. Molzon]: Ah, just that I would like to be granted a continuance for, like 60 days, even 30 days, so I can seek counsel so I have legal representation, 'cause I don't know what I'm doing.

{¶19} "[The Court]: Ms. Kurt? (Mr. Molzon's counsel)

{¶20} "[Ms. Kurt]: Your Honor, my client actually has no position on the continuance.

{¶21} "[The Court]: Ms. Jonas? (the GAL)

{¶22} "[Ms. Jonas]: Ma'am, I would oppose that motion for continuance. These children have been in limbo for several months, and I think a resolution of this case would be in their best interests.

{¶23} "[Ms. Kurt]: My client would concur with the Guardian, given the Guardian's statement, Your Honor.

{¶24} "[The Court]: Okay. This matter - - let's see - - it was filed in January. We had our final pretrial June 8, 2020. The matter was set for two days of hearings four

5

months ago after the COVID crisis had been dealt with by this Court, so at this point I am denying the continuance and I am proceeding today."

{¶25} Ms. Molzon was present for the trial but did not participate in questioning witnesses and did not present any witnesses or exhibits.

**Termination of Shared Parenting Hearing**

{¶26} Prior to the start of trial, Ms. Molzon filed a motion for the court to conduct in camera interviews with the children, which the court granted. Mr. Molzon also withdrew his motion for an independent psychological evaluation. Mr. Molzon and the GAL testified at the hearing.

{¶27} Mr. Molzon testified that his primary concern was the stability of the children because Ms. Molzon was not cooperative with shared parenting, she did not keep him informed of the activities, she did not respond to OFW, and she responded to text messages infrequently. Mr. Molzon provided several purported examples.

{¶28} For instance, Mr. Molzon believed J.M. had a respiratory problem, but Ms. Molzon refused to respond to his requests to cooperate with a medical examination. He also attempted to arrange for flu shots for the children, but she disagreed and refused her consent. One of Ms. Molzon's adult children (instead of Ms. Molzon) informed Mr. Molzon of a serious incident between J.M. and a neighbor. In fact, her two adult children often relayed information to Mr. Molzon regarding the children. In addition, R.M. started to display behavioral difficulties, including inappropriate communications with a boy via her iPad, and vaping. R.M. told Mr. Molzon that Ms. Molzon allowed her to vape so long as she did not use "real things."

6

Case No. 2021-A-0024

{¶29} Mr. Molzon further testified that he initially filed his motion because R.M. was having problems with school and because of her mental health, including postings of suicide ideation on her social media, which Ms. Molzon's older daughter brought to his attention. Both parents decided to enroll R.M. in school online, but Ms. Molzon withdrew her permission without explanation. In the month before he filed his motion, i.e., December 2019, Ms. Molzon refused to let R.M. return home after R.M. declined to participate in a family event. She texted Mr. Molzon to come and get R.M. because she did not want her in the house.

{¶30} Mr. Molzon also testified that after the GAL filed her report, Ms. Molzon shared the report with the children, and R.M. threatened to commit suicide. He believes Ms. Molzon often shared inappropriate information with the children regarding himself and the custody proceedings.

{¶31} The GAL documented her findings in a report. Among other observations, the GAL noted Ms. Molzon's refusal to co-parent with Mr. Molzon in accordance with the shared parenting plan. Ms. Molzon viewed Mr. Molzon's attempts to communicate with her as trying to control her, and for the most part, Ms. Molzon did not respond to Mr. Molzon. With those issues in mind, the GAL recommended that Mr. Molzon be named the legal custodian and residential parent for school purposes; that Ms. Molzon have visitation on alternative weekends with an extra hour on her weekend during the school year; and that the parties share school breaks. The GAL "hesitantly agreed" to alternative weeks during the summer. Lastly, she recommended counseling for Ms. Molzon to learn better parenting skills and to address her personal issues.

7

{¶32} At trial, the GAL testified to her report and her findings that Ms. Molzon appears to use the children as a conduit to Mr. Molzon. She believed that Mr. Molzon would further communication and facilitate shared parenting between them but that Ms. Molzon would not. The GAL further testified that after she submitted her report, Ms. Molzon called R.M. and informed her that she would never see her again, which devastated R.M.

{¶33} During the in camera interviews, the children confirmed the incidents between Ms. Molzon and R.M. They also discussed schedules, how each parent handled the other, and how each parent disciplined the children.

{¶34} The magistrate found that there was no evidence that either parent denied the other parenting time on a continuous basis. However, due to Ms. Molzon's lack of effort to share information, her failure to respond to Mr. Molzon's requests to discuss the children's needs, and her inability to consult with him regarding their needs, the magistrate found that shared parenting was no longer in the best interests of the children.

{¶35} The magistrate terminated the shared parenting plan, named Mr. Molzon as the residential parent and legal custodian of the children, and granted parenting time with Ms. Molzon every other weekend and one evening a week.

{¶36} The magistrate also terminated Mr. Molzon's child support order and ordered a recalculation of child support since no financial information had been submitted at trial.

### Procedural Ping-Pong

{¶37} Shortly after trial, Ms. Molzon obtained counsel, filed preliminary objections to the magistrate's decision, and obtained an extension to file supplemental objections

8

pending the filing of the hearing transcript. In addition, she filed a motion to set aside the magistrate's decision that terminated Mr. Molzon's child support obligation. She alleged that the magistrate never found a change of circumstances or calculated a new child support worksheet.

{¶38} Before Ms. Molzon had the opportunity to file supplemental objections, the trial court issued a judgment entry adopting the magistrate's decision.

{¶39} Shortly afterwards, Ms. Molzon filed a motion to modify allocation of parental rights and responsibilities, alleging there was a change of circumstances because R.M. was residing with her 100% of the time and J.M. was residing with her 50% of the time.

{¶40} Ms. Molzon filed her supplemental objections to the magistrate's decision. Shortly thereafter, she filed a motion to vacate the trial court's order adopting the magistrate's decision because Mr. Molzon prepared and submitted the judgment entry without notifying Ms. Molzon. Further, the trial court had made no mention of Ms. Molzon's preliminary objections and issued the entry prior to the deadline for the filing of her supplemental objections.

{¶41} Ms. Molzon filed an appeal of the trial court's judgment entry adopting the magistrate's decision in this court.

{¶42} We remanded the matter to allow the trial court to rule on Ms. Molzon's motion to vacate. On remand, the trial court granted Ms. Molzon's motion to vacate because it had adopted the magistrate's decision before ruling on her timely objections. The trial court scheduled a hearing on her objections. Ms. Molzon filed a motion to

9

dismiss her appeal in this court, which we granted, finding the appeal settled and dismissed.

{¶43} After a video conference pretrial with the parties and their respective counsel, the magistrate issued an order noting that the issues before the court were Ms. Molzon's two motions to modify parental rights and responsibilities. Since the objections to the magistrate's decision were yet unresolved, the parties agreed that the order providing for a weekly rotating parenting schedule would remain in place. Ms. Molzon also moved the court to reinstate the child support order and a motion to reactivate the GAL, which the magistrate granted.

{¶44} The trial court issued a judgment entry overruling Ms. Molzon's objections, and Ms. Molzon filed the instant appeal.

{¶45} The trial court issued a new judgment entry adopting the magistrate's decision after overruling Ms. Molzon's objections, and Ms. Molzon filed an amended appeal. Lastly, the trial court stayed Mr. Molzon's reinstated child support obligation pending this appeal.

{¶46} Ms. Molzon raises four assignments of error for our review:

{¶47} "[1.] The trial court erred as a matter of law and abused its discretion in denying the appellant's motion for continuance in order to obtain counsel.

{¶48} "[2.] The trial court erred as a matter of law and abused its discretion by granting the appellee's motion to terminate shared parenting and designating the appellee as the sole residential parent and legal custodian of the minor children.

{¶49} "[3.] The trial court erred as a matter of law and abused its discretion in failing to consider the best interest factors outlined under Ohio Revised Code Section 3109.04(F).

{¶50} "[4.] The trial court erred as a matter of law and abused its discretion in modifying and terminating the appellee's child support obligation."

### Standard of Review

{¶51} This court has held that decisions involving the allocation of parental rights and responsibilities are accorded great deference on review. *In re K.R.*, 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶ 28; *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion. *In re K.R.* at ¶ 28; *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Further, we review a judgment of the trial court adopting the decision of its magistrate for an abuse of discretion. *In re K.R.* at ¶ 28. In addition, an appellate court reviews the trial court's termination of a shared parenting plan and child support orders for an abuse of discretion. *Id.*; *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶52} An abuse of discretion is the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.* at ¶ 67. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the

11

reviewing court would have reached a different result is not enough, without more, to find error. *Id.*

**{¶53}** The highly deferential abuse of discretion standard is particularly appropriate in allocation of parental rights and responsibilities cases since the trial judge is in the best position to determine the credibility of the witnesses and there "'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" *In re K.R.* at ¶ 30, quoting *Wyatt v. Wyatt,* 11th Dist. Portage No. 2004-P-0045, 2005-Ohio-2365, ¶ 13. In so doing, a reviewing court is not to weigh the evidence, "'but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.'" *Id.*, quoting *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196, 638 N.E.2d 112 (3d Dist.1994).

### Motion to Continue

**{¶54}** In her first assignment of error, Ms. Molzon contends the trial court erred in overruling her objection to the magistrate's decision denying her motion for a continuance in order to obtain counsel after she dismissed her counsel one day before trial.

**{¶55}** In reviewing whether a trial court abused its discretion in denying a continuance, an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the prompt and efficient dispatch of justice. *In re Zak*, 11th Dist. Lake Nos. 2001-L-216, 2001-L-217, and 2011-L-218, 2003-Ohio-1974, ¶ 29.

**{¶56}** Some of the objective factors that a reviewing court should consider include the following: (1) the length of the requested delay; (2) whether the parties have requested and received other continuances; (3) the inconvenience to the parties,

12

witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived; (5) whether the movant contributed to the circumstances giving rise to the request for a continuance; and (6) any other relevant factors, depending on the unique circumstances of each case. *Id.* at ¶ 30; *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981).

{¶57}  A review of Ms. Molzon's objection to the magistrate's decision to deny her motion for a continuance reveals she failed to demonstrate any resulting prejudice, i.e. she failed to allege any additional evidence or testimony she would have presented that would have likely changed the outcome of the trial.

{¶58}  Analyzing the facts with the *Unger* factors in mind, we note Ms. Molzon requested a 60- or 30-day continuance to secure new counsel.  While that is not an unreasonable request for a continuance, Ms. Molzon terminated her attorney because she was unsatisfied with her representation one day before and with full knowledge of the impending trial.  Trial was originally scheduled for June of 2020; however, due to COVID-related delays (primarily the GAL meeting with the children), the trial was continued until October.  The GAL was concerned for the children because they were in a state of "limbo" for so long.

{¶59}  While she proceeded pro se during the trial and did not cross-examine Mr. Molzon, make any objections, or present her own witnesses and evidence, Ms. Molzon was given numerous opportunities to present additional evidence and testimony after she obtained counsel shortly after trial.   Ms. Molzon filed preliminary objections and supplemental objections, and the trial court granted her motion to vacate so that the trial court could hear and rule on her objections.  In all of these motions and filings, Ms. Molzon

13

never alleged any prejudice from the magistrate's denial of her motion for a continuance or offered any additional testimony or evidence that she would have presented. She had the opportunity to make a compelling argument to vacate the magistrate's decision with her objections and to proffer any key evidence she was not able to put forward at trial. Quite simply, there is no abuse of discretion in failing to grant a continuance where the continuance would not have changed the outcome of the case. *In re K.J.*, 2018-Ohio-471, 107 N.E.3d 50, *58 (10th Dist.) (Even if the mother had been able to testify to newly revealed progress on her case plan, it is unlikely the information would have changed the outcome of the case).

{¶60} In *In re Dryer*, 2d Dist. Montgomery No. 18040, 2000 WL 331770 (Mar. 31, 2000), the appellant similarly complained that the trial court held a patently unfair hearing and prejudiced her by allowing opposing counsel to lead witnesses without objection. *Id.* at *2. The Second District aptly stated, "On the record before us, we cannot find that the trial court abused its discretion when it denied [the appellant's] motion. No doubt, she was impaired in supporting her claims when she was required to proceed unrepresented. The matters of which she complains in her second assignment of error demonstrate that. However, *frustration* is not prejudice, and [the appellant] has not stated in her brief to this court what matters she was prevented from putting before the court because she was unrepresented." (Emphasis sic.) *Id.* at *3.

{¶61} After considering the circumstances surrounding the denial of the motion for a continuance, and the *Unger* factors, we cannot say the trial court abused its discretion in overruling Ms. Molzon's objection to the magistrate's decision to deny her

14

motion for a continuance. Ms. Molzon failed to set forth any evidence she was precluded from presenting that would have changed the outcome of the trial court's determination.

**{¶62}** Ms. Molzon's first assignment of error is without merit.

## Change of Circumstances

**{¶63}** In her second assignment of error, Ms. Molzon contends the trial court erred in adopting the magistrate's decision terminating the parties' shared parenting plan and designating Mr. Molzon as the residential parent and legal custodian of the minor children without finding a change of circumstances pursuant to R.C. 3109.04(E) or delineating the best interest factors outlined in R.C. 3109.04(F). Since Ms. Molzon raises whether the trial court failed to consider the best interest factors pursuant to R.C. 3109.04(F) in her third assignment of error, we will address that portion of her second assignment of error with her third assignment of error.

**{¶64}** R.C. 3109.04(E)(2)(c) permits a court to terminate a shared parenting plan that is made a part of the final decree. A finding of "'[a] change of circumstances is not required before terminating shared parenting.'" *Harrison v. Harrison*, 2d Dist. Clark No. 2018-CA-105, 2019-Ohio-2835, ¶ 6, quoting *Curtis v. Curtis*, 2d Dist. Montgomery No. 25211, 2012-Ohio-4855, ¶ 7. R.C. 3109.04(E)(2)(c) requires only that the court find that terminating the shared parenting decree is in the child's best interest. *Id.*

**{¶65}** Thus, R.C. 3109.04(E)(2)(c) provides, in relevant part: "*The court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children.*" (Emphasis added.)

15

Case No. 2021-A-0024

{¶66} In *In re K.R.*, *supra*, we explained that "R.C. 3109.04(E)(2)(c), which addresses termination of a shared parenting plan, merely requires the trial court to find that shared parenting is not in the best interest of the child. Thus, while modification requires the court to find a change in circumstances in addition to the child's best interest, termination only requires the court to find that termination of the plan is in the child's best interest." *Id.* at ¶ 47.

{¶67} The Supreme Court of Ohio recently clarified this issue in *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, 168 N.E.3d 396, where it determined that a trial court need consider only the best interest of the child when deciding whether to terminate a shared parenting plan and which parent to designate as the residential and custodial parent of a minor child. *Id.* at ¶ 1. Stated differently, the Supreme Court held that a trial court does not have to find a change of circumstances in order to designate a parent the residential parent and legal custodian of a minor child after terminating a shared parenting plan and decree. *Id.*

{¶68} Ms. Molzon's second assignment of error is without merit.

**Best Interest Factors**

{¶69} In her third assignment of error, Ms. Molzon contends the trial court erred in adopting the magistrate's decision when the magistrate's decision failed to consider the best interest factors pursuant to R.C. 3109.04(F).

{¶70} R.C. 3109.04(F)(1) and (F)(2) enumerate certain factors a court must consider in determining whether shared parenting is in the best interests of the child. This list is nonexclusive as the trial court is not limited to the statutory factors. *Brandt v. Brandt*, 11th Dist. Geauga No. 2012-Ohio-3064, 2012-Ohio-5932, ¶ 13. Though there should be

16

Case No. 2021-A-0024

some indication in the judgment entry that the trial court considered the best interests of the child pursuant to R.C. 3109.04(F), there is no requirement it make specific findings in its entry as to each and every factor. *Id.*; *see also In re S.S.*, 11th Dist. Geauga No. 2010-G-2997, 2012-Ohio-120, ¶ 23.

{¶71} The factors found in R.C. 3109.04(F)(1) include: (a) the wishes of the child's parents regarding the child's care; (b) the wishes or concerns of the child as expressed to the court; (c) the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to his home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments; (h) whether either parent previously has been convicted of or pleaded guilty to any criminal offense; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state. *Brandt* at ¶ 14.

{¶72} The factors found in R.C. 3109.04(F)(2) include: (a) the ability of the parents to cooperate and make decisions jointly, with respect to the children; (b) the ability of each parent to encourage the sharing of love, affection, and contact between the child and other parent; (c) the history of, or potential for, domestic abuse; (d) the geographic proximity of the parents to one another; and (e) the recommendation of the guardian ad litem. *Brandt* at ¶ 15.

Case No. 2021-A-0024

**{¶73}** Although the magistrate's decision was not explicit in delineating the specific R.C. 3109.04(F) factors, a plain reading of the decision reveals the magistrate considered all of the factors. Specifically, the magistrate found that R.M. was having trouble adjusting to school; she was falling behind when she was with Ms. Molzon; and she was failing math. There were several incidents involving R.M. and Ms. Molzon, including Ms. Molzon sharing the GAL's report with R.M. R.M. was experiencing behavioral difficulties, including suicide ideation, and both children were in counseling. The magistrate also found there was no evidence that either parent denied the other parenting time on a continuous basis.

**{¶74}** In addition, the magistrate conducted in camera interviews with the minor children. The magistrate found that Ms. Molzon made no effort to share information with Mr. Molzon, and that she did not respond to Mr. Molzon's requests to discuss the children's needs or consult him regarding their needs.

**{¶75}** The magistrate considered the GAL's testimony that Mr. Molzon would encourage the children to contact Ms. Molzon but that Ms. Molzon would not do the same. Critically, the magistrate noted that while she believed Ms. Molzon would honor parenting orders, she did not believe Ms. Molzon would facilitate shared parenting. The magistrate considered the recommendation in the GAL's report that shared parenting terminate and Mr. Molzon be named the residential and custodial parent. The magistrate also considered that there was no history of domestic abuse and that neither party indicated an intent to leave the state of Ohio. Finally, inasmuch as no financial information was offered, the magistrate could not assess child support obligations after terminating the shared parenting plan.

18

Case No. 2021-A-0024

{¶76} Thus, contrary to Mr. Molzon's assertions, there is no indication that the magistrate failed to consider the nonexclusive factors set forth in R.C. 3109.04(F)(1) and (2). As we stated in *Murray v. Murray*, 11th Dist. Portage No. 2007-P-0070, 2018-Ohio-3242, "This court has recognized, as have many of the other appellate districts, that, in making a custody determination, 'the trial court is not required to expressly consider or balance [the R.C. 3109.04(F)] factors before awarding custody,' nor is the court 'required to make express findings of fact unless it has a Civ.R. 52 motion before it as long as there is some indication in the judgment entry that the trial court considered the best interests of the children.'" *Id.* at ¶ 36, quoting *In re L.R.S.*, 11th Dist. Portage Nos. 2016-P-0050 and 2016-P-0051, 2017-Ohio-2604, ¶ 25. The magistrate's decision in this case is replete with indications that the children's best interests were thoroughly considered.

{¶77} Ms. Molzon's third assignment of error is without merit.

### Termination of Child Support Obligation

{¶78} In her fourth assignment of error, Ms. Molzon contends the trial court erred in modifying and terminating Mr. Molzon's child support obligation without completing or considering a child support worksheet/schedule.

{¶79} Any review of the trial court's termination of child support, however, would be premature. Although the trial court terminated Mr. Molzon's child support order when it terminated the shared parenting plan, no financial information was submitted by the parties. Specifically, the magistrate determined that "[t]he child support order of Bert Molzon should terminate at the time this Decision is adopted by the Court. A support order cannot be calculated at this time as no financial information has been submitted by the Court." Thereafter, due to the convoluted procedure of this case, the child support

19

was initially stayed. The order was reinstated while Ms. Molzon's motion to vacate was pending, and the parties returned to alternating parenting weeks. The order was again stayed pending this appeal.

{¶80} Thus, there is nothing before us to review, and we remand on this limited basis for the trial court to determine the parties' child support obligations in light of our affirmance of the trial court's judgment adopting the magistrate's decision terminating the parties' shared parenting plan and designating Mr. Molzon as the residential parent and legal guardian.

{¶81} We affirm the judgments of the Ashtabula County Court of Common Pleas in part since we dismiss Ms. Molzon's fourth assignment of error as unripe and remand to the trial court to determine the parties' child support obligations.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

20