[Cite as *Morrison v. Morrison*, 2024-Ohio-1741.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

RICK MORRISON,

        Plaintiff-Appellee,

- vs -

DESIREE MORRISON,

        Defendant-Appellant.

**CASE NO. 2023-G-0015**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 DC 000400

# **O P I N I O N**

Decided: May 6, 2024
Judgment: Affirmed

*Joseph G. Stafford*, *Nicole A. Cruz* and *Kelley R. Tauring*, Stafford Law Co., L.P.A., North Point Tower, 1001 Lakeside Avenue, Suite 1300, Cleveland, OH 44114 (For Plaintiff-Appellee).

*Jay F. Crook*, Jay F. Crook, Attorney at Law, LLC, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Desiree Morrison, appeals from the judgments of the Geauga County Court of Common Pleas, denying her request for a continuance and ruling on various issues during the divorce hearing. For the following reasons, we affirm the decision of the lower court.

{¶2} On May 8, 2019, plaintiff-appellee, Rick Morrison, filed a Complaint for Divorce. Desiree filed an Answer and Counterclaim.

{¶3} From 2019 to 2022, various motions to continue hearings in the matter were

filed by both parties, citing scheduling conflicts, time needed for discovery, and other matters.

{¶4} The divorce trial commenced on June 22, 2022, and the matter was tried on multiple dates. An additional trial date was scheduled for November 7, 2022. On November 3, 2022, Desiree's counsel filed a Notice of Withdrawal as Counsel, stating that Desiree "terminated the attorney-client relationship." A Magistrate's Order was filed on November 4, releasing counsel. On the morning of November 7, Desiree filed a Motion for Emergency Continuance, in which she requested that the hearing scheduled for that day be continued. She argued that "plaintiff and Defendant agree[d] to terminate their respective Counsel and work[] collaboratively on a settlement agreement." She contended that Rick had terminated his attorney on October 31, 2022 in writing, she subsequently terminated her counsel, and she no longer had representation. She attached an unsigned copy of a letter from Rick to his counsel, dated October 31, in which Rick stated that counsel was terminated and he would proceed pro se. The magistrate issued an order denying the continuance, noting that the matter had been pending since May 8, 2019.

{¶5} The hearing proceeded on that date. At the commencement, the magistrate inquired of Desiree, "Are you going to proceed without an attorney through the balance of these proceedings?" She responded, "No." The magistrate indicated that no continuance would be granted for any reason: "[t]his is way over the supreme court guidelines and the case has to be disposed of." Cross-examination of Desiree commenced and the hearing proceeded.

{¶6} Rick was questioned by his counsel. Desiree commenced cross-

2

examination and various objections were raised to the form and content of her questions. During Desiree's testimony, the magistrate concluded the trial and did not permit her to testify further. After Desiree argued that she did not have evidence or witnesses prepared because of her lack of counsel, and interrupting Rick's counsel several times, the magistrate ordered her out of the courtroom and found that the hearing was concluded.

{¶7} Desiree filed a Motion to Set Aside the magistrate's November 7, 2022 order denying her continuance, which was denied.

{¶8} A Magistrate's Decision was filed on April 5, 2023, which recommended granting the divorce on the grounds of incompatibility. It found the house should be sold and the proceeds divided equally, each spouse should keep their retirement accounts, and no spousal support should be awarded.

{¶9} Desiree, through counsel, filed Objections to the Magistrate's Decision on April 24, 2023, objecting to the denial of her request for a continuance and various factual findings made by the magistrate. Rick filed a Motion to Dismiss the Objections, arguing that they were untimely filed. On May 3, 2023, Desiree filed a Brief in Opposition and Motion to Accept Filing Instanter, arguing there was excusable neglect in the late filing.

{¶10} A Judgment Entry of Divorce was filed on May 4, 2023. The court found no errors or defects on the face of the Magistrate's Decision and adopted it. It also found that "[n]either party filed objections to the Magistrate's Decision." It did not rule on the motions relating to Desiree's objections.

{¶11} Desiree timely appeals and raises the following assignments of error:

{¶12} "[1.] Trial court abused its discretion in not considering out of rule filed objections.

3

{¶13} "[2.]  A court commits plain error when it denies a motion to continue when the grounds for the continuance are alleged settlement by the parties and termination of counsel, subsequently denies pro se counsel the right to ask questions, issues orders not to argue their position and/or to argue with opposing counsel and terminates the pro se part[y's] cross examination of a witness, direct testimony and the trial over the objection of the pro se party."

{¶14}  In her first assignment of error, Desiree argues that it was error for the trial court not to grant the motion for leave to file the objections instanter, arguing that "[a]fter nearly four years of litigation, littered with continuances granted in favor of Mr. Morrison, a three day delay is not sufficient grounds for Mr. Morrison to claim any sort of prejudice." She argues that the delay in filing the objections was excusable neglect given that Desiree needed time to secure counsel.

{¶15}  We initially note that the trial court did not address the objections or motion requesting leave to file instanter.  "[A] trial court's failure to rule on a motion creates a presumption that the trial court overruled the motion." *Cunnane-Gygli v. MacDougal*, 11th Dist. Geauga No. 2004-G-2597, 2005-Ohio-3258, ¶ 20; *Ferbstein v. Silver*, 9th Dist. Summit No. 18684, 1998 WL 388976, *3 (July 8, 1998) (the court's failure to respond to the leave to file objections constituted the presumption it was overruled).

{¶16}  "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i)."  Civ.R. 53(D)(3)(b)(i).  "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the

4

face of the magistrate's decision."  Civ.R. 53(D)(4)(c).

{¶17}  Here, the objections were not timely since the Magistrate's Decision was filed on April 5.  Objections were due on April 19 but were not filed until April 24.  Desiree does not dispute that her objections were untimely but argues that the court should have granted leave to file them and considered their merits.

{¶18}  A trial court "may consider untimely objections" if it has not yet entered a final judgment.  *Dejak v. Dejak*, 2019-Ohio-3236, 141 N.E.3d 522, ¶ 15 (11th Dist.).  Where objections are not timely filed, leave may be granted under Civ.R. 6(B).  *Hale v. Hale*, 11th Dist. Lake Nos. 2005-L-101 and 2005-L-114, 2006-Ohio-5164, ¶ 32; *Gorombol v. Gorombol*, 11th Dist. Lake No. 95-L-036, 1996 WL 494760, *1 (Aug. 9, 1996) (leave to file late objections can be granted under Civ.R. 6(B)).  Civ.R. 6(B) provides: "When by these rules * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

{¶19}  Rulings on motions for leave to file untimely objections are reviewed under an abuse of discretion standard.  *Hale* at ¶ 32 (rulings on motions under Civ.R. 6 to file untimely objections are reviewed for an abuse of discretion); *State ex rel. Lindenschmidt v. Butler Cty. Bd. Of Commrs.*, 72 Ohio St.3d 464, 465, 650 N.E.2d 1343 (1995); *see White v. Grange Ins. Co.*, 2d Dist. Montgomery No. 29151, 2022-Ohio-497, ¶ 75 ("the trial court refused to consider [appellant's] objections because they were untimely, which was

5

within the court's broad discretion"). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶20} Desiree argues that the delay in filing her objections was the result of excusable neglect because there was a delay in obtaining counsel and a misreading of the three-day rule, and that the short delay in filing did not cause prejudice.

{¶21} "Courts have held that the following are examples of excusable neglect: where default judgment was entered against a party who had no knowledge or notice of the pending litigation; where the movant's attorney suffered from personal illness; and where counsel failed to appear for trial because he had not received notice of a rescheduled trial date. * * * In contrast, neglect has been held to be inexcusable when a party's inaction can be characterized as a disregard for the judicial system." *Hasch v. Hasch*, 11th Dist. Lake No. 2007-L-127, 2008-Ohio-1689, ¶ 26. "The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds." *Lindenschmidt* at 466. "A majority of the cases finding excusable neglect also have found unusual or special circumstances that justified the neglect of the party or attorney." (Citation omitted.) *Whitehouse v. Customer is Everything!, Ltd.*, 11th Dist. Lake No. 2007-L-069, 2007-Ohio-6936, ¶ 43. "[E]xcusable neglect is not present if the party seeking relief could have prevented the circumstances from occurring." (Citation omitted.) *Am. Express Natl. Bank v. Bush*, 11th Dist. Lake Nos. 2019-L-130 and 2020-L-029, 2020-

6

Ohio-4424, ¶ 32.

{¶22} We find that the court did not err in choosing not to grant leave to file objections or consider the untimely objections. While Desiree argues that she needed time to hire counsel, the trial ended in November 2022, she obtained counsel to file findings of fact and conclusions of law in January 2023, and the Magistrate's Decision was entered in April 2023. Desiree fails to explain why she could not have hired counsel in the interim expecting that a decision would be issued. Further, the record indicates that counsel was retained to file objections on April 11 and the objections were not due until April 19. In *Planin v. Planin*, 11th Dist. Geauga No. 2005-G-2644, 2006-Ohio-2933, this court addressed a situation where the appellant indicated he did not receive the magistrate's decision from his attorney until nine days after it had been filed and found the trial court did not abuse its discretion in denying a motion for an extension of time to file objections to the magistrate's decision. It held that "[i]f [appellant] received his copy on March 19, he should have realized that objections needed to be filed by March 24" and, at the least, sought additional time to file objections prior to that time. *Id.* at ¶ 17. Here, counsel had several days to prepare objections and, if he could not have completed the objections by April 19, could have at least filed a request for more time to file objections before the deadline for objections.

{¶23} In support of her argument that the trial court abused its discretion, Desiree cites *Linville v. Kratochvill*, 11th Dist. Geauga No. 2013-G-3161, 2014-Ohio-1153. In *Linville*, this court held that the trial court abused its discretion in determining that the appellant should not be granted leave to file his answer where he filed a motion for leave only a week after his answer was due since there was not significant delay and no

7

prejudice was demonstrated. *Id.* at ¶ 20-22. In *Linville*, the circumstances were different than in the present matter since the denial of the request to file an answer resulted in default judgment and prevented the appellant a chance to make any arguments on the merits of the case. Here, the matter proceeded for several years and multiple hearings were held, all of which permitted Desiree a chance to argue the merits of her case.

**{¶24}** Desiree also argues that, given the length of time the matter had been pending before the court and the numerous delays and continuances throughout, the brief delay in filing the objections should have been permitted and did not cause prejudice. However, we do not find that prior delays in the trial impacted whether Desiree could have complied with the rules for timely filing expressly set forth in Civ.R. 53(D)(3)(b)(i). It has been held that filing even one day late can justify denial of leave if the court exercises its discretion to determine that there was no excusable neglect. *Hale*, 2006-Ohio-5164, at ¶ 33. Further, in *In re Thut,* 11th Dist. Lake No. 2004-L-138, 2005-Ohio-4647, this court found no abuse of discretion in denying an extension where there had previously been extensions granted, noting that "[b]y the time the motion at issue was filed, we believe the trial court was attempting to avoid further delays of the case, and denied the motion in an effort to promote judicial efficiency and bring the estate proceedings to a conclusion." *Id.* at ¶ 21.

**{¶25}** While Desiree does not present any specific argument as to this issue, she also notes in her issue for review that confusion over the three-day rule justified the late filing. Pursuant to Civ.R. 6(D), "[w]henever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice * * * upon that party and the notice or paper is served upon that party by mail or commercial

8

carrier service * * *, three days shall be added to the prescribed period." Authority in this district and from the Supreme Court clearly indicates that the three-day rule does not apply to the 14-day deadline for timely filing objections to the magistrate's decision under Civ.R. 53(D)(3)(b)(i). *Duganitz v. Ohio Adult Parole Auth.*, 92 Ohio St.3d 556, 557, 751 N.E.2d 1058 (2001); *B-Right Trucking Co. v. Warfab Field Machining and Erection Corp.*, 11th Dist. Trumbull No. 2000-T-0072, 2001 WL 1602687, *2 (Dec. 14, 2001). Counsel had no basis for believing that it did apply and we do not find this to be excusable neglect.

{¶26} The first assignment of error is without merit.

{¶27} In her second assignment of error, Desiree argues that multiple aspects of the proceedings below constituted plain error, including the denial of her right to cross-examine on certain issues and terminating her testimony/the trial, all of which she contends were precipitated by the denial of her request for a continuance.

{¶28} First, Desiree argues that it was an abuse of discretion to deny her request for a continuance prior to the commencement of the final day of trial. The decision whether to grant a continuance is within the sound discretion of the trial court. *Polk v. Polk*, 11th Dist. Trumbull No. 2006-T-0048, 2007-Ohio-2049, ¶ 8. An appellate court applies a balancing test to a ruling on a motion to continue, balancing the court's interest in controlling its docket and efficiency with the potential prejudice to the moving party. *Waldorf v. Waldorf*, 11th Dist. Trumbull No. 2013-T-0094, 2015-Ohio-1207, ¶ 11; *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981) ("[w]eighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice"). Factors to be considered include: "(1) the length of the delay requested; (2) whether other continuances

9

Case No. 2023-G-0015

have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for the continuance; and (6) other relevant factors, depending on the unique facts of each case." *Id.*

{¶29} Desiree requested a continuance because she terminated her counsel a few days before the final scheduled trial hearing date. The following evidence was presented in relation to the circumstances surrounding the termination of counsel: Pursuant to an October 31, 2022 letter entered into evidence by Rick, a copy of which was also attached to Desiree's Motion for Continuance, Rick indicated to his counsel, Attorney Stafford, that he wished to terminate him. Neither copy of the letter demonstrates on its face that it was sent to counsel but statements made by Attorney Stafford at the hearing appear to indicate it was provided to him, since there was a line of questioning indicating previous discussion with Rick about the letter. Also presented was an undated text message from Desiree to Rick indicating that he should e-mail Attorney Stafford "again" and request that he withdraw as counsel of record. Desiree could not recall the date it was sent. A November 3, 2022 e-mail to Desiree's counsel, attached to her Motion to Continue, stated that Rick had terminated Attorney Stafford, she requested that her counsel withdraw, and indicated the two parties would be proceeding pro se. On the same date, Desiree's counsel filed a notice of withdrawal and a magistrate's order was issued on the following day releasing Desiree's counsel.

{¶30} Desiree argues that there "were grounds, tantamount to fraud, with regards to [her] decision to terminate her counsel under the belief that the parties would resolve

10

Case No. 2023-G-0015

the matter privately and directly." She argued at the hearing and in her motion that she and Rick had agreed to settle the matter and both agreed to terminate their counsel. She contended that Rick reached this agreement in an attempt to cause her to proceed pro se and obtain a strategic advantage. However, Rick and his counsel argued to the contrary at trial. Rick appeared with counsel, demonstrating he had not terminated the relationship. Rick's counsel argued that Desiree was trying to control the circumstances of the trial, that she was "play[ing] a game" and "manipulated the situation," and disputed Desiree's argument that Rick suggested firing their counsel. Rick testified that Desiree had prepared the letter for him to sign terminating his counsel. The undated text message to Rick referenced above, which Desiree conceded she authored, stated: "You need to e-mail Stafford again and tell him to please immediately file your notice of withdrawal as counsel of record as I previously instructed you to do in writing and verbally. If you show me that you e-mailed him that today, I'll be ready to settle with you." The text message appears to indicate Desiree encouraged him to fire counsel. Further, while she argues that the parties entered into a settlement agreement causing her to fire counsel, it is clear they ultimately did not settle. In her motion for a continuance, Desiree stated that the two "made significant progress on settling and will have" a settlement agreement prepared shortly, not that they had already completed a settlement agreement in the matter.

{¶31} It is evident that the court took into consideration the foregoing circumstances in denying the continuance. The magistrate indicated on the record that it "was at the 12th hour that the letter went out asking Mr. Rosenthal [Desiree's counsel] to recuse himself basically" and the letters provided by Desiree relating to termination of counsel were "dated relatively recently." This supports a finding that inconvenience may

11

Case No. 2023-G-0015

be caused to the opposing party since the continuance was requested on the morning of the hearing. We also observe that in the factual findings in this matter, the magistrate found Desiree lacked credibility. This may have impacted the magistrate's decision as to which party was truthful regarding the circumstances surrounding the termination of counsel and supports a finding that Desiree contributed to the circumstances which led her to seek the continuance. Finally, both parties had previously requested continuances of various hearing dates which caused delay in the proceedings and led the court to advise the parties that further continuances would not be granted. These factors all weigh in favor of the denial of the continuance.

{¶32} While Desiree argues that the years-long delay in the matter was caused by Rick seeking repeated continuances, the record reveals that there were also delays due to COVID as well as several motions filed by Desiree's counsel seeking to reschedule hearings or trial dates on January 30, 2020, June 10, 2020, and June 16, 2022. The trial court was justified in considering that the matter had already been delayed as well as the fact that the continuance requested here was during an ongoing trial.

{¶33} Desiree argues that other errors throughout the proceedings resulted in an unfair trial. She concedes that a plain error standard applies to the court's adoption of factual findings and legal conclusions in the final divorce decree where timely objections were not filed but contends that such error occurred. Civ.R. 53(D)(3)(b)(iv). "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the

12

underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

**{¶34}** Desiree argues that it was unfair to require her to proceed pro se as it prevented her from being able to ask appropriate questions and introduce evidence on her behalf. As noted above, it is evident the magistrate found that Desiree was responsible for having to proceed pro se due to her decision to terminate counsel while the hearings in this matter were proceeding. While this court has "recognize[d] the difficult task a pro se litigant faces when representing himself" it has followed the rule that "'[a] pro se litigant is held to the same standard as other litigants and is not entitled to special treatment from the court.'" (Citations omitted.) *Henderson v. Henderson*, 11th Dist. Geauga No. 2012-G-3118, 2013-Ohio-2820, ¶ 22; *Lopshire v. Lopshire*, 11th Dist. Portage No. 2008-P-0034, 2008-Ohio-5946, ¶ 32, quoting *Metzenbaum v. Gates*, 11th Dist. Geauga No. 2003-G-2503, 2004-Ohio-2924, ¶ 7, citing *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). "[T]he court cannot simply disregard the rules in order to accommodate a party who fails to obtain counsel." (Citation omitted.) *Henderson* at ¶ 22. In June 2022, the court "denied" defense counsel's notice of a conflict with the trial date, noting that the magistrate "has made it clear" to both sides that no continuances would be granted and if counsel was not able to attend, substitute counsel shall attend. The court clearly advised that it would not be further continuing the matter but, nonetheless, Desiree decided to terminate counsel. This resulted in the fact that she proceeded in this trial pro se.

**{¶35}** The magistrate did not commit plain error in sustaining objections to the form and scope of improper questions as the court was not required to allow such

13

questions simply because Desiree proceeded pro se. Although she argues that she was not permitted to ask questions or give testimony on topics that Rick's counsel had been allowed to address, we observe that she did not object to questions posed by Rick's counsel. While, in her fact summary, Desiree points to the court's failure to allow her to ask questions about Rick's assets and bank accounts, she does not present specific argument as to how disallowing such questions impacted the outcome of the matter. *In re Dryer*, 2d Dist. Montgomery No. 18040, 2000 WL 331770, *3 (Mar. 31, 2000) (while the defendant was impaired in supporting her claims when her request for a continuance was denied and she proceeded unrepresented, the court did not find an abuse of discretion in denying her continuance since she failed to demonstrate the evidence she would have presented and the resulting prejudice: "*frustration* is not prejudice"). *See also Molzon v. Molzon*, 11th Dist. Ashtabula No. 2021-A-0024, 2022-Ohio-1634, ¶ 59 (the defendant could have made an argument to vacate the magistrate's decision on her continuance by demonstrating in her objections any prejudice and by proffering evidence that would have been presented at trial). To the extent that Desiree takes issue with the failure to allow questions about the settlement agreement that was never completed, we do not find that this was relevant to or impacted the final decree of divorce and disposition of property.

{¶36} Desiree also argues that it was plain error to terminate her cross-examination of Rick and to end the trial before she completed the presentation of her case. The magistrate terminated Desiree's cross-examination of Rick after she had asked repeated questions about the settlement and property distribution discussions between the two parties and objections had been sustained on those grounds. During

14

Desiree's testimony, the magistrate concluded the trial and did not permit her to testify further. Throughout the trial, the following occurred: the magistrate sustained objections to many of Desiree's questions as lacking relevance or being repetitive; Desiree argued with Rick's counsel; Rick's counsel noted "the length of time it's taking and the apparent looks she's giving everyone," which the court took notice of; Rick's counsel stated he believed Desiree was "staring down" his client during questioning; the magistrate stated on the record that "the defendant is stopping and staring at the Court and that's not appropriate"; the magistrate stated that Desiree had been arguing with the court; and the magistrate found that Desiree had "gone over the line" by making statements about counsel's failure to follow the "ethics code." After Desiree acknowledged that she had no further evidence or witnesses, the magistrate then ordered her out of the courtroom and concluded the hearing.

{¶37} Evid. R. 611(A) provides: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." The record indicates that the court terminated cross-examination questioning and the trial because Desiree was asking irrelevant or repeated questions, was arguing with the court and counsel, was delaying the trial by stopping and staring at the magistrate, and may have been "staring down" Rick while he was on the witness stand. In this case, and particularly where the magistrate was in the best position to evaluate Desiree's conduct, we do not find that it erred in exercising its control over the trial to terminate Desiree's cross-examination and presentation of her case or any

15

additional argumentation in favor of her positions.  *See State v. Goetzman*, 11th Dist. Trumbull No. 92-T-4728, 1993 WL 164701, *3 (Apr. 30, 1993) (the trial court did not err in ending the appellant's closing argument where he was warned to address relevant arguments but failed to do so).  While Desiree argues that the court's actions in terminating the presentation of her case prevented her from submitting documentary evidence and evidence relating to Rick's assets, it was evident from the record that Desiree did not have additional evidence or witnesses to present at the time the matter concluded as she stated on the record that she "could not get to the evidence" given her termination of counsel and she believed that the court would not be ready for her witnesses on that day.  The court's termination did not prevent her from presenting additional witnesses or exhibits.

{¶38}  The second assignment of error is without merit.

{¶39}  For the foregoing reasons, the judgments of the Geauga County Court of Common Pleas are affirmed.  Costs to be taxed against appellant.


MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.