[Cite as *In re T.L.*, 2019-Ohio-4919.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

IN THE MATTER OF:  T.L. AND T.L.,

Dependent Children.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 JE 0013**

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, Jefferson County, Ohio
Case Nos. 2018 DN 00022, 2018 DN 00023

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. M. Catherine Savage Dylewski*, 125 South 5th Street, Steubenville, Ohio 43952, for Appellee, and

*Atty. Eric M. Reszke,* Sinclair Building, Suite 810*,* 100 North 4th Street, Steubenville*,* Ohio 43952, for Appellant.

Dated:
November 15, 2019

_____

**DONOFRIO, J.**

{¶1}    Appellant appeals from a Jefferson County Common Pleas Court Juvenile Division judgment granting the motion of appellee, the Jefferson County Department of Jobs and Family Services (JCDJFS), for permanent custody of two of appellant's nine children.

{¶2}    Appellant (mother) gave birth to T.L. and T.L. (the twins) on September 3, 2018.  Ten days later, JCDJFS filed motions for permanent custody of the twins alleging they were dependent.

{¶3}    In the motions JCDFS stated that its concern for the twins was based on mother's extensive history with the agency.  In support, it set out the following history.  In 2001, mother was the named perpetrator of neglect of her oldest child.  In 2006, she was the named perpetrator of substantiated physical abuse from poisoning.  In 2009, she was the named perpetrator of physical abuse involving the burning and scalding of one of her children.  This incident also resulted in mother being convicted of a felony charge of child endangerment.  Additionally in 2009 mother gave birth to a baby who tested positive for cocaine.  In 2017, mother gave birth to another baby who tested positive for cocaine.

{¶4}    JCDFS further stated that since 2001, when she had her first child, mother had lost custody of all seven of her other children.  Three of her children went into JCDFS's permanent custody and the other four children were in the custody of family members.  T.L. (father) is the father of three of those seven children, including one of whom JCDFS has permanent custody.  He is also the father of the twins.

{¶5}    JCDFS also noted that mother was on parole at the time of the twins' birth, stemming from her child endangerment conviction.  One of the terms of her parole was to not have contact with any children, including her own children, until September 2019.

{¶6}    Finally, JCDFS stated that it had encouraged mother before the twins were born to locate any family members who could care for the twins after she gave birth, given the terms of her parole.  But mother and father reported that they did not have any family members able to care for the twins.

Case No. 19 JE 0013

{¶7} The trial court granted emergency temporary custody of the twins to JCDJFS and set the matter for a disposition hearing.

{¶8} Next, JCDJFS filed motions for a determination that it was not required to make reasonable efforts at reunification before seeking permanent custody of the twins. It alleged that pursuant to R.C. 2151.419(A)(2)(e), because both mother and father had their parental rights terminated with respect to siblings of the twins, it was not required to make reasonable efforts at reunification before seeking permanent custody.

{¶9} A magistrate held a hearing on JCDJFS's motions. In several October 16, 2018 decisions, the magistrate determined that due to mother having her parental rights involuntarily terminated to two of the twins' siblings and father having his parental rights terminated to one of the twins' siblings, JCDJFS was not required to make reasonable efforts to prevent removal of the twins from their home, or to eliminate the continued removal of the twins from their home, or to return the twins to their home. The magistrate also determined the twins should be adjudicated dependent after hearing testimony from the caseworker and mother.

{¶10} Neither mother nor father filed objections to the magistrate's decisions.

{¶11} On November 19, 2018, the trial court adopted the magistrate's decisions. It adjudicated the twins dependent. And it granted JCDJFS's motion finding that JCDJFS was not required to make reasonable efforts at reunification under R.C. 2151.419.

{¶12} Next, the magistrate held a hearing on JCDJFS's motions for permanent custody. The magistrate heard testimony from the twins' caseworker, mother's case manager, and mother. The magistrate also considered a report from the twins' guardian ad litem (GAL) recommending that the court grant permanent custody to JCDJFS. The magistrate determined: (1) the children could not be safely placed with either parent within a reasonable time or should not be placed with either parent; (2) mother was previously convicted of felony child endangerment involving a sibling of the twins; (3) clear and convincing evidence warranted granting permanent custody to JCDJFS; and (4) it was in the twins' best interests to terminate parental rights and grant permanent custody to JCDJFS. Therefore, the magistrate recommended that the court grant the motion for permanent custody and terminate mother's and father's parental rights.

**{¶13}** This time mother filed objections to the magistrate's decisions. She argued (1) the court should have granted her parenting time during the pendency of this case, (2) the magistrate erred in deciding that JCDJFS was not required to make reasonable efforts at reunification, and (3) the magistrate erred in recommending the court grant the motion for permanent custody. Father did not file objections to the magistrate's decisions.

**{¶14}** On May 2, 2019, the trial court overruled mother's objections and adopted the magistrate's decisions granting permanent custody to JCDJFS. Mother filed a timely notice of appeal on May 30, 2019. Father did not appeal.

**{¶15}** Mother now raises a single assignment of error. Her sole assignment of error states:

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE AGENCY'S MOTION FOR PERMANENT CUSTODY.

**{¶16}** Mother argues that she should have been given the opportunity to complete a reunification plan. Mother asserts the record demonstrates that she and father made a decision to remain together and establish a stable home for the twins. She points out that a representative from JCDJFS found their home to appropriate. She also points out that the twins were born healthy and drug-free. Mother further notes that she was employed prior to her high-risk pregnancy and that she was to return to the workforce after she was medically cleared. And she notes that she had been attending substance abuse and mental health counseling. Finally, she points out that her most recent felony conviction was in May 2010, over nine years ago.

**{¶17}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.'" *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). But this right is not absolute. *In re Sims*, 7th Dist. Jefferson No. 02-JE-2, 2002-Ohio-3458, ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

Case No. 19 JE 0013

{¶18} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims*, 7th Dist. Jefferson No. 02-JE-2, ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶19} Initially, we must address JCDJFS's argument that because mother failed to file objections to the magistrate's October 16, 2018 decisions, which granted JCDJFS's motion and found that it was not required to make reasonable efforts at reunification before seeking permanent custody, she has waived this issue on appeal.

{¶20} A party shall not assign as error on appeal the trial court's adoption of any factual finding or legal conclusion, unless the party objected to that finding or conclusion as required by the Civil Rules, absent plain error. Civ.R. 53(D)(3)(b)(iv). In order to be timely, the party filing objections must do so within 14 days of the filing of the decision. Civ.R. 53(E)(3)(b)(i).

{¶21} Because mother did not file objections from the magistrate's decisions finding that JCDJFS was not required to make reasonable efforts at reunification before seeking permanent custody of the twins, she has waived all but plain error as to this issue on appeal. She did file objections to the magistrate's decision to grant permanent custody to JCDJFS; however, those objections only preserved the issue of permanent custody for our review.

{¶22} Given the gravity of a parental rights termination judgment, however, we will still address the merits of mother's argument regarding reasonable efforts despite her lack of objections to the magistrate's decisions.

{¶23} Generally, at any hearing where the court removes a child from his or her home or continues the removal of a child from his or her home, the court shall determine whether the children services agency has made reasonable efforts to prevent the removal of the child from his or her home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. R.C. 2151.419(A)(1). The agency has the burden of proving that it has made those reasonable efforts. R.C. 2151.419(A)(1).

{¶24}   Nonetheless, in certain circumstances, the agency is not required to make reasonable efforts at reunification.

If any of the following apply, the court *shall* make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:

* * *

(e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections.

(Emphasis added); R.C. 2151.419(A)(2)(e).

{¶25}   In this case, it was uncontroverted that mother had her parental rights involuntarily terminated to two of the twins' siblings and father had his parental rights terminated as to one of the twins' siblings.  Mother's parental rights were involuntarily terminated as to the twins' half-sister, P.H. who was adjudicated dependent, on February 29, 2012.  And mother's and father's parental rights were both involuntarily terminated as to the twins' brother, T.R.C. who was adjudicated dependent, on March 13, 2012.

{¶26}   Because both mother and father had their parental rights involuntarily terminated as to the twins' siblings, the trial court was required by R.C. 2151.419(A)(2)(e) to find that JCDJFS was not required to make reasonable efforts at reunification.

{¶27}   Next, we must determine whether the trial court abused its discretion in granting permanent custody to JCDJFS.

{¶28}  Pursuant to R.C. 2151.414(B)(1):

[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to

grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶29} Thus, in order to grant permanent custody to the agency, the trial court must make one of the findings set out in R.C. 2151.414(B)(1) and make a best interest finding.

{¶30} Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶31} In the present case, the trial court found that the twins cannot be placed with either parent within a reasonable time or should not be placed with either parent. Thus, it made the finding set out in R.C. 2151.414(B)(1)(a). The court also found that it was in the twins' best interest to grant their permanent custody to JCDJFS. Thus, the trial court made the two findings necessary to grant permanent custody.

{¶32} R.C. 2151.414(E) governs findings that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Pursuant to that section:

In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

* * *

Case No. 19 JE 0013

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 [child endangering] * * * and the child or a sibling of the child was a victim of the offense[.]

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

R.C. 2151.414(E)(6)(11).

{¶33} The trial court found that mother has had her parental rights involuntarily terminated with respect to two of the twins' siblings. It found father has had his parental rights involuntarily terminated with respect to one of the twins' siblings. It also found that mother was convicted of felony child endangering in violation of R.C 2919.22 and a sibling of the twins was the victim.

{¶34} Clear and convincing evidence supports the trial court's findings and determination. At the permanent custody hearing, the magistrate heard testimony from the twins' caseworker, mother's case manager, and mother. The magistrate also considered the GAL report.

{¶35} Katie Forsythe, the twins' caseworker at JCDJFS, testified first. Forsythe testified that mother gave birth to nine children between 2001 and 2018 (including the twins) with four different fathers. (Tr. 10-11). She stated that JCDJFS had assumed custody of all of the children at some point as a result of abuse, dependency, and/or neglect adjudications. (Tr. 12). Three of the children had been born with cocaine in their systems, one as recently as 2017. (Tr. 13-15). One was also born with PCP in his system. (Tr. 14). One of the children was born while mother was in prison. (Tr. 15). One of the children suffered burns in the bathtub while in mother's care. (Tr. 14). Mother had her parental rights involuntarily terminated as to two of the children. (Tr. 13, 15). She voluntarily surrendered her parental rights to another one of the children. (Tr. 17). The other four children are in the legal custody of various family members. (Tr. 14-15).

**{¶36}** Forsythe testified that initially mother had been provided case plans with the goal of reunification with her older children. (Tr. 19). Mother was reunified with her three older children in 2008, after they were removed from her care for some time. (Tr. 19-20). But the children were all removed from mother's custody when one of the children was burned while in her care. (Tr. 15-16). This incident also resulted in mother's conviction for felony child endangering for which she served a one-year prison term. (Tr. 23).

**{¶37}** Next, Forsythe testified that JCDJFS became involved with mother again in 2018. (Tr. 22). She stated that mother's parole officer contacted the agency to inform it that mother was pregnant with the twins and that as a condition of her parole, she was not to have contact with minors, including her own children, until September 23, 2019. (Tr. 22-23).

**{¶38}** Forsythe further testified that mother and father both had records for being both the perpetrator and the victim of domestic violence. (Tr. 21). And she testified that mother had outstanding warrants in Allegheny County, Pennsylvania. (Tr. 29).

**{¶39}** When asked about JCDJFS's concerns if the court did not grant permanent custody, Forsythe acknowledged that mother was currently drug-free, had housing in place, and desired to be employed. (Tr. 31, 36-37). But Forsythe pointed out that JCDJFS could not work toward reunification with mother until the twins were a year old because of mother's parole conditions. (Tr. 31). Thus, the twins would have no bond with mother. (Tr. 31). Additionally, Forsythe pointed to mother's cumulative history with the agency regarding her other seven children. (Tr. 31-32). And she noted concern with mother's extensive criminal history including child endangering, disorderly conduct, robbery, domestic violence, resisting arrest, attempted drug abuse, theft, assault, receiving stolen property, failure to comply with a lawful order of a police officer, fleeing and eluding, and two outstanding warrants. (Tr. 32-35).

**{¶40}** Finally, Forsythe testified that the twins were currently in foster care with a family that had already adopted one of their siblings and was in the process of adopting another one of their siblings. (Tr. 39). She stated that if the court granted JCDJFS permanent custody, the foster family was willing to adopt the twins in order to keep the four siblings together. (Tr. 40). She also opined that the twins needed a permanent

placement, a permanent placement could not be achieved without a grant of custody to JCDJFS, and permanent custody was in the twins' best interest. (Tr. 41).

{¶41}   Gloria Crossland, mother's counselor, testified next. Crossland stated that mother had been receiving group and individual counseling for substance abuse; however, she had to stop attending counseling when she was put on bedrest during her pregnancy. (Tr. 79-80). Crossland also reported that mother's recent drug screens (May 2018 and November 2018) were negative. (Tr. 81-82, 95). Crossland testified that at this point in time, she would trust mother to parent the twins. (Tr. 86-87).

{¶42}   Mother testified last. Mother stated that she is currently married to father and living with him. (Tr. 102-103). She testified that the twins were born healthy with no drugs in their systems. (Tr. 103). She stated that she is not currently using drugs. (Tr. 107). She stated that she had just been hired by The Dollar Tree as a seasonal part time associate with the possibility of a permanent position. (Tr. 105). Mother expressed to the court that she wished to be reunified with the twins. (Tr. 110).

{¶43}   Regarding her outstanding warrants, mother admitted she has outstanding felony warrants in Allegheny County, Pennsylvania for "very serious charges." (Tr. 116). When asked why she has not turned herself in to deal with those charges, mother stated, "I just haven't." (Tr. 128). When asked who would care for the twins if she had custody of them and she was subsequently incarcerated on those charges, mother stated that father would care for them until she was released from prison. (Tr. 133). And regarding her criminal history, mother admitted to 31 prior convictions, some felonies and some misdemeanors. (Tr. 129).

{¶44}   The twins' GAL recommended that the court grant JCDJFS's motion for permanent custody. The GAL cited mother's extensive history with JCDJFS regarding her other children, her parole conditions, and her extensive criminal history. The GAL also stated that father was unwilling to assume custody of the twins.

{¶45}   Based on the above, we find clear and convincing evidence supports the trial court's findings that the twins cannot or should not be placed with mother within a reasonable time. As a condition of her parole, mother was not to have contact with minors, including her own children, until the twins would be a year old. Additionally, it was uncontroverted that mother has had her parental rights involuntarily terminated as to

two of the twins' siblings. And it was uncontroverted that mother has been convicted of felony child endangering with respect to one of the twins' siblings.

**{¶46}** Additionally, the evidence supports the trial court's determination that it is in the twins' best interest to grant permanent custody to JCDJFS.

**{¶47}** In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, * * * with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child [regarding certain crimes, withholding food or medical treatment, drug and alcohol abuse, abandonment, and having previously had parental rights terminated].

R.C. 2151.414(D)(1).

**{¶48}** In this case, the trial court found that the twins have been in foster care since birth and have been successfully integrated into the foster family, which includes two of their older siblings. It further found that the twins have not bonded with mother or father. The court noted that the twins were too young to express their wishes to the court. The court found that the twins were in need of a legally secure placement and that such could not be accomplished without a grant of permanent custody to JCDJFS. Finally, as

Case No. 19 JE 0013

noted above, the court found that mother had her parental rights involuntarily terminated as to two of the twins' siblings and father had his parental rights involuntarily terminated as to one of the twins' siblings.

**{¶49}** The best interest factors weigh heavily in favor of granting permanent custody to JCDJFS. And as discussed above, clear and convincing evidence supports each of the trial court's findings. Thus, the trial court did not abuse its discretion in finding that it was in the twins' best interest to grant the permanent custody motion.

**{¶50}** Accordingly, mother's sole assignment of error is without merit and is overruled.

**{¶51}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

Robb, J., concurs.

Case No. 19 JE 0013

———————————

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Jefferson County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**