[Cite as *In re Z.C.*, 2022-Ohio-3199.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| IN THE MATTER OF:<br><br>Z.C., DEPENDENT/NEGLECTED CHILD | CASE NO. 2022-A-0014<br><br>Civil Appeal from the<br><br>Court of Common Pleas,<br>Juvenile Division<br><br>Trial Court No. 2019 JC 00015 |

**O P I N I O N**

Decided: September 9, 2022
Judgment: Affirmed

*Colleen M. O'Toole, Ashtabula County Prosecutor,* and *Shelley M. Pratt,* Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee, Ashtabula County Children Services Board).

*Judith M. Kowalski,* 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Appellant, D.C., Sr.).

*Joseph K. Palazzo,* Kurt Law Office, LLC, 4770 Beidler Road, Willoughby, OH 44094 (Guardian ad litem).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, D.C., Sr. ("Father"), appeals from the March 2, 2022 judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of Z.C., a minor child, to the Ashtabula County Children Services Board ("ACCSB"). For the reasons set forth herein, the judgment is affirmed.

**{¶2}** In January 2019, the Ashtabula County Children Services Board ("ACCSB") began looking into concerns related to eight children who lived with their mother and Benjamin Tressler, Sr. Shortly thereafter, ACCSB was granted temporary custody of the eight children. Father is the biological father of four of the eight children and did not reside with them at any point during the ACCSB investigation and subsequent legal proceedings as he and their mother were no longer together. This appeal pertains to only one of Father's children, Z.C.

**{¶3}** Father's four children were initially placed with their paternal grandfather, though they were later removed due to allegations of abuse. Six of the eight children, not including Z.C. and his half-brother, L.T., were placed with kin; those families were ultimately granted legal custody of the six children. Unfortunately, the families were unable to take all the children, and Z.C. and L.T. were placed in foster case. They have remained with the same foster family since March of 2020. ACCSB has since been granted permanent custody of L.T., and the foster family wishes to adopt both L.T. and Z.C.

**{¶4}** Father first contacted ACCSB in March 2019, and then again upon his release from prison for a parole violation in April 2020. He demanded custody of his children but declined to be added to the case plan. Instead, Father filed a motion for legal custody of Z.C. on May 11, 2020 in the juvenile court. On August 13, 2020, ACCSB filed a motion to modify temporary custody to permanent custody. Ultimately the court terminated Father's parental rights and granted permanent custody of Z.C. to ACCSB. Father filed objections to the magistrate's decisions, which the court overruled in March 2022. This appeal followed.

2

{¶5} Father's assigned errors are related and will be addressed together. They state:

{¶6} [1.] The Ashtabula County Juvenile Court erred and abused its discretion in finding that clear and convincing evidence supported granting permanent custody of the subject child to the Ashtabula County Department of Children and Family Services.

{¶7} [2.] The Juvenile Court erred to the prejudice of the appellant and against the best interest of the child by granting permanent custody, as permanent custody serves to permanently separate the child and his siblings on both a legal and physical basis.

{¶8} Pursuant to R.C. 2151.414(B), before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test. First, it must find one of the following factors applies: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E). Second, the court must determine that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶9} "In determining the child's best interest under the second prong, R.C. 2151.414(D) requires that the juvenile court consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as

3

expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." *In re C.C.*, 11th Dist. Trumbull No. 2016-T-0050, 2016-Ohio-7447, ¶80.

{¶10} If both prongs of the foregoing test are met by clear and convincing evidence, the trial court may terminate the rights of a natural parent and grant custody of the child to the moving party. "Clear and convincing evidence" is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶42. We will not substitute our judgment for that of the trial court applying a clear-and-convincing standard where there is ample competent and credible evidence supporting the trial court's determination. *See In re A.J.O. and M.N.O.*, 1st Dist. Hamilton No. C-180680, 2019-Ohio-975, ¶6.

{¶11} Moreover, an appellate court reviews a trial court's determination of permanent custody and the termination of parental rights for an abuse of discretion. *In re Snow,* 11th Dist. Portage No. 2003-P-0080, 2004-Ohio-1519, ¶28. *See also, In re D.F.,* 2d Dist. Montgomery Nos. 29350 and 2016-CA028, 2022-Ohio-1781, ¶23; *In re L.S.*, 8th Dist. Cuyahoga No. 109995, 2021-Ohio-510, ¶51; *Matter of T.L.,* 7th Dist. Jefferson No. 19 JE 0013, 2019-Ohio-4919, ¶18; and *Matter of W.G.,* 7th Dist. Jefferson No. 22 JE 0002, 2022-Ohio-2342, ¶23. "Further, we review a judgment of the trial court adopting the decision of its magistrate for an abuse of discretion." *Molzon v. Molzon*, 11th Dist. Ashtabula No. 2021-A-0024, 2022-Ohio-1634, ¶51. An abuse of discretion is the trial

4

court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary 11 (8 Ed.2004). "The highly deferential abuse of discretion standard is particularly appropriate in allocation of parental rights and responsibilities cases since the trial judge is in the best position to determine the credibility of the witnesses and there '"may be much that is evident in the parties' demeanor and attitude that does not translate well to the record."'" *Molzon, supra,* at ¶53 quoting *In re K.R.,* 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶30, quoting *Wyatt v. Wyatt,* 11th Dist. Portage No. 2004-P-0045, 2005-Ohio-2365, ¶13.

{¶12} In this case, as to the first prong of the test, there is no dispute that Z.C. was in the temporary custody of ACCSB for more than 12 out of a consecutive 22-month period at the time the court granted ACCSB permanent custody. Instead, Father's argument focuses on the determination that permanent placement was in Z.C.'s best interest.

{¶13} Specifically, Father argues that ACCSB should have done more to help engage Father; that the legal custodians of the six other children agree to keep the children connected to each other and Father, and that the guardian ad litem ("GAL") did not recommend a grant of permanent custody. He argues, that taken together, the facts do not support a firm belief that permanent custody is the appropriate disposition. Additionally, Father argues that permanent placement is not in the best interest of Z.C. primarily due to the risk of severing his relationship with his siblings. In support, he cites *In re D.F.,* 8th Dist. Cuyahoga No. 108055, 2019-Ohio-3046, which emphasized the importance of maintaining sibling relationships.

5

Case No. 2022-A-0014

**{¶14}** However, *In re D.F.* is factually distinguishable from the case at bar. Crucially, the mother in that case substantially complied with the case plan and had consistent contact with her child all throughout the process. *Id.* at ¶11 and ¶38. The reviewing court noted that it was not the case in which the children were at any point out of contact with their mother. *Id.* at ¶38. Additionally, "[t]his family unit, when in Mother's care, is safe, happy and enjoys the company of one another. * * * The plan here was always reunification. Mother had done all the work to have her children returned to her. This family should be together." *Id.* at ¶54 and ¶55. In short, the mother in that case had consistent contact with her children and made substantial progress with the case plan, could meet the children's basic needs, was compliant with the mental health services, and was very bonded to her children.

**{¶15}** The facts here are distinguishable. Father's actions while the children were in the custody of ACCSB support the juvenile court's conclusion that permanent placement was in Z.C.'s best interest. When Father reached out to ACCSB in March 2019, he informed them that he didn't have a house big enough for all his children, and that he had not had contact with them for approximately three years. Throughout the pendency of the case, Father moved into a house that was under renovation but never followed through on a home visit, purportedly due to COVID-19 concerns. He had some contact with some of his children, though one of his sons declined to talk with him because the child said Father had hurt his feelings. He did not have the technical requirements to have video calls with Z.C. and declined to have telephone calls with Z.C. because they were supervised. Father also stated that he wished to have visits with Z.C. but consistently maintained he did not want to be added to the case plan. He did not

6

cooperate with ACCSB and failed to keep appointments to meet with the case worker. Even after Father was appointed counsel and was informed of the importance of being included in the case plan, he did not follow through. On the other hand, Z.C. has been with his foster family and half-brother since March of 2020 and is closely bonded with them.

{¶16} Father also argues that the court erred in granting permanent placement because the GAL did not recommend permanent placement with ACCSB; however, the GAL was also unable to recommend placement with Father because he was not able to see them interact. The juvenile court was not convinced that placement with Father was better for the children than a grant of permanent custody to ACCSB, and in light of the evidence in the record, we discern no error.

{¶17} Finally, as Father correctly points out, in Ohio there is no statute that provides protections for relationships between adopted children and their biological siblings. However, adoption does not automatically or necessarily preclude contact between an adopted child and their biological siblings. The families who have custody of six of Z.C.'s siblings have expressed a willingness to keep the children in contact. Though there was some concern expressed about their present ability to connect with Z.C., the record shows some contact between Z.C. and his siblings during the pendency of these proceedings. The juvenile court ultimately gave greater weight to the past practice of the adoptive families than Father's promise of future behavior in keeping the family together.

{¶18} After careful consideration of the record before us, we cannot agree that the trial court abused its discretion in adopting the magistrate's decision, terminating Father's

7

parental rights and granting ACCSB's motion for permanent placement. Accordingly, Father's assigned errors are without merit.

{¶19} We recognize that by applying an abuse of discretion standard of review our decision is in conflict with the judgment of the Sixth District Court of Appeals in *In re S.V.*, 6th Dist. Wood No. WD-13-060, 2014-Ohio-422; the Fifth District Court of Appeals in *Matter of Y.M.*, 5th Dist. Tuscarawas Nos. 2021 AP 09 0020 through 0023, 2022-Ohio-677; and the Fourth District Court of Appeals in *Matter of Ca.S.*, 4th Dist. Pickaway Nos. 21CA9 and 21CA10, 2021-Ohio-3874, ¶44, which apply a manifest weight of the evidence standard, and the First District in *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, which applies a clear and convincing evidence standard, and the Twelfth District in *In re R.B.*, 12th Dist. Butler Nos. CA2022-01-003 and CA2022-01-004, 2022-Ohio-1705, which applies a sufficiency of the evidence standard*.*

{¶20} Section 3(B)(4), Article IV of the Ohio Constitution provides "[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination." *Id.* The Ohio Supreme Court set forth three requirements which must be met in order to certify a case:

> {¶21} First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict *must* be "upon the same question." Second, the alleged conflict must be on a rule of law-not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends in conflict with the judgment on the same question by other district courts of appeals. (Emphasis original.) *Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 596 (1993).

8

**{¶22}** Therefore, we sua sponte certify a conflict to the Supreme Court of Ohio, pursuant to Article IV, Section 3(B)(4), Ohio Constitution. We certify the following question for review:

> **{¶23}** When reviewing a trial court's decision to terminate parental rights, is the appellant standard of review abuse of discretion, manifest weight of the evidence, clear and convincing evidence, or sufficiency of the evidence?

**{¶24}** In light of the foregoing, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed. We certify a conflict to the Ohio Supreme Court.

MATT LYNCH, J., concurs,

MARY JANE TRAPP, J., concurs in judgment only with a Concurring Opinion.

_____

MARY JANE TRAPP, J., concurs in judgment only with a Concurring Opinion.

**{¶25}** I concur in judgment only and write to clarify and confirm the standard of review in cases involving the termination of parental rights.

**{¶26}** We begin with the recognition that "the right to raise a child is an '"essential"' and '"basic"' civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Furthermore, a parent's right to the custody of his or her own child has been deemed '"paramount."' *Id.*, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977). Permanent termination of parental rights has been described as '"the family law equivalent of the death penalty in

9

a criminal case.'" *Id.*, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). The Supreme Court of Ohio has determined, based upon these principles, that a parent must be afforded every procedural and substantive protection the law allows. *In re M.D.*, 11th Dist. Geauga No. 2021-G-0038, 2022-Ohio-1462, ¶ 42.

**{¶27}** R.C. 2151.414 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. *Id.* at ¶ 43. R.C. 2151.414(A)(1) mandates that the juvenile court must schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care. *Id.*

**{¶28}** Following the hearing, R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply: "(d) The child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period * * *." *Id.* at ¶ 44.

**{¶29}** Therefore, R.C. 2151.414(B)(1) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. *Id.* at ¶ 45. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. *Id.*

{¶30} Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. *Id.* at ¶ 46. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates that the juvenile court must consider all relevant factors, including but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. *Id.*

{¶31} "The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."" *Id.* at ¶ 47, quoting *In re T.B.*, 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415, ¶ 35, quoting *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

11

**{¶32}** Our review of the juvenile court's determination to terminate parental rights and award permanent custody to an agency is, in recognition of the paramount interests at stake, the necessarily heightened clear and convincing standard of review, a standard which this court has long applied. *See In re Kirksey*, 11th Dist. Trumbull No. 3808, 1988 WL 61450, *2 (June 10, 1988); *In re T.B.* at ¶ 36; *In re M.D.* at ¶ 48.

**{¶33}** We explicitly clarified and confirmed the clear and convincing standard of review in *In re J.S.E.*, 11th Dist. Portage Nos. 2009-P-0091 & 2009-P-0094, 2010-Ohio-2412, wherein we stated, "*to clarify, the appropriate standard of review* is that '"we will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by *clear and convincing evidence*."'" (Emphasis added.) *Id.* at ¶ 25, quoting *In re T.B.* at ¶ 36, quoting *In re Lambert*, 11th Dist. Geauga No. 2007-G-2751, 2007-Ohio-2857, ¶ 75.

**{¶34}** In *In re Adoption of Holcomb*, the Supreme Court of Ohio explained that this heightened standard is to be applied in cases that may involve the termination of fundamental parental rights, which in that case was an adoption case without parental consent. *Id.* at 368. Thus, the court stated: "*Because cases such as these may involve the termination of fundamental parental rights*, the party petitioning for adoption has the burden of proving, by clear and convincing evidence * * *." (Emphasis added.) *Id.* The petitioner's allegations must be proved by clear and convincing evidence to the "satisfaction" of the lower court. *Id.*

**{¶35}** This burden of proof, however, is not to be confused with the appellate standard of review, where we "examine the record and determine if the trier of fact had

12

Case No. 2022-A-0014

sufficient evidence before it to satisfy this burden of proof," which we will not overturn "*unless it is unsupported by clear and convincing evidence.*" (Emphasis added.) *Id.*

{¶36} Because the majority misapprehends the standard of review that was clarified in *In re J.S.E.*, I concur in judgment only.

13