[Cite as *In re Z.C.*, 2024-Ohio-785.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| IN THE MATTER OF:<br><br>Z.C., DEPENDENT/NEGLECTED CHILD | CASE NO. 2022-A-0014<br><br>Civil Appeal from the<br>Court of Common Pleas,<br>Juvenile Division<br><br><br>Trial Court No. 2019 JC 00015 |

## O P I N I O N

Decided: March 4, 2024
Judgment: Affirmed

*Colleen M. O'Toole,* Ashtabula County Prosecutor*,* and *Jessica Fross,* Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee, Ashtabula County Children Services Board).

*Judith M. Kowalski,* 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Appellant, D.C., Sr.).

*Joseph K. Palazzo,* Kurt Law Office, LLC, 4770 Beidler Road, Willoughby, OH 44094 (Guardian ad litem).

ROBERT J. PATTON, J.

{¶1} On December 27, 2023, the Supreme Court of Ohio issued its opinion in *In re Z.C.*, --- Ohio St.3d ----, --- N.E.3d ----, 2023-Ohio-4703 ("*Z.C. II*"), reversing this court's opinion in *In re Z.C.*, 2022-Ohio-3199, 195 N.E.3d 590 (11th Dist.) ("*Z.C. I*"), and remanding the matter for this court to implement and apply the appropriate standard of review. For the reasons discussed in this opinion, the judgment of the Ashtabula County

Court of Common Pleas, granting permanent custody of Z.C., a minor child, to the Ashtabula County Children Services Board ("ACCSB"), is affirmed.

{¶2} In January 2019, the ACCSB began looking into concerns related to eight children who lived with their mother and Benjamin Tressler, Sr. Shortly thereafter, ACCSB was granted temporary custody of the eight children. Appellant, D.C., Sr. ("Father") is the biological father of four of the eight children and did not reside with them at any point during the ACCSB investigation and subsequent legal proceedings as he and their mother were no longer in a relationship. This appeal pertains to only one of Father's children, Z.C.

{¶3} Father's four children were initially placed with their paternal grandfather, though they were later removed due to allegations of abuse. Six of the eight children, not including Z.C. and his half-brother, L.T., were placed with kin; those families were ultimately granted legal custody of the six children. Unfortunately, the families were unable to take all the children, and Z.C. and L.T. were placed in foster care. They have remained with the same foster family since March of 2020. ACCSB has since been granted permanent custody of L.T., and the foster family wishes to adopt both L.T. and Z.C.

{¶4} Father first contacted ACCSB in March 2019, and then again upon his release from prison for a parole violation in April 2020. He demanded custody of his children but declined to be added to the case plan. Instead, Father filed a motion for legal custody of Z.C. on May 11, 2020 in the juvenile court. On August 13, 2020, ACCSB filed a motion to modify temporary custody to permanent custody. Ultimately the court terminated Father's parental rights and granted permanent custody of Z.C. to ACCSB.

2

Father filed objections to the magistrate's decisions, which the court overruled in March 2022. This appeal followed.

{¶5} Father's assigned errors are related and will be addressed together. They state:

> [1.] The Ashtabula County Juvenile Court erred and abused its discretion in finding that clear and convincing evidence supported granting permanent custody of the subject child to the Ashtabula County Department of Children and Family Services.
>
> [2.] The Juvenile Court erred to the prejudice of the appellant and against the best interest of the child by granting permanent custody, as permanent custody serves to permanently separate the child and his siblings on both a legal and physical basis.

{¶6} Pursuant to R.C. 2151.414(B), before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test. First, it must find one of the following factors applies: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E). Second, the court must determine that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99, 661 N.E.2d 738, (1996).

{¶7} "In determining the child's best interest under the second prong, R.C. 2151.414(D) requires that the juvenile court consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the

3

child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."  *In re C.C.*, 11th Dist. Trumbull No. 2016-T-0050, 2016-Ohio-7447, ¶ 80.

{¶8}  If both prongs of the foregoing test are met by clear and convincing evidence, the trial court may terminate the rights of a natural parent and grant custody of the child to the moving party.  "Clear and convincing evidence" is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."  *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. We will not substitute our judgment for that of the trial court applying a clear-and-convincing standard where there is ample competent and credible evidence supporting the trial court's determination. *See In re A.J.O. and M.N.O.*, 1st Dist. Hamilton No. C-180680, 2019-Ohio-975, ¶ 6.

{¶9}  In *Z.C. I*, 2022-Ohio-3199, this court observed that "an appellate court reviews a trial court's determination of permanent custody and the termination of parental rights for an abuse of discretion.  *In re Snow,* 11th Dist. Portage No. 2003-P-0080, 2004-Ohio-1519, ¶28. *See also, In re D.F.,* 2d Dist. Montgomery Nos. 29350 and 2016-CA028, 2022-Ohio-1781, ¶23; *In re L.S.*, 8th Dist. Cuyahoga No. 109995, 2021-Ohio-510, ¶51; *Matter of T.L.,* 7th Dist. Jefferson No. 19 JE 0013, 2019-Ohio-4919, ¶ 8; and *Matter of W.G.,* 7th Dist. Jefferson No. 22 JE 0002, 2022-Ohio-2342, ¶23." *Z.C. I*, at ¶11.  This

4

court, however, recognizing a conflict among various Ohio appellate districts in the applicable standard of review in termination-of-parental-rights cases, sua sponte certified a conflict with the Supreme Court of Ohio. The Court accepted the matter and clarified that "the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards apply in such appeals." *Z.C. II*, 2023-Ohio-4703, at ¶ 1. The Court specifically stated "[b]ecause the Eleventh District Court of Appeals applied an abuse-of-discretion standard in this case, * * * this matter [is remanded] to the court of appeals for it to apply the proper standards." *Id.* at ¶ 18. We accordingly move forward in recognition of the standards announced by the Court in *Z.C. II*.[1]

{¶10} A challenge to the sufficiency of the evidence "'is a test of adequacy.'" *Z.C. II,* at ¶ 13, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The weight of the evidence, however, is not as perfunctory "'but depends on its *effect in inducing belief.*'" (Emphasis sic.). *Z.C. II*, quoting *Thompkins*. When applying the sufficiency standard, this court reviews the record to determine whether the evidence is legally sufficient to support the judgment as a matter of law. *Z.C. II.* Even where the

---

1. Despite the clarification of the appropriate standard, the instant matter *was not* tried to the bench before the judge, but to the magistrate. Although the Supreme Court in *Z.C. II* instructed this court to "apply the proper standard," *Id.* at ¶ 18, it did not expressly state that the standard of review for a trial court's adoption of a magistrate's decision must be reviewed under the more stringent standard. Typically, we review a judgment of the trial court adopting the decision of its magistrate in a termination of parental rights case for an abuse of discretion. *See, e.g., In re. A.R.*, 11th Dist. Ashtabula No. 2018-A-0078, 2019-Ohio-2166, ¶ 24; *In re C.P.*, 2d Dist. Montgomery Nos. 28833, 28834, 28835, 2021-Ohio-323, ¶ 25; *In re V.P.*, 8th Dist. Cuyahoga No. 109649, 2020-Ohio-5626, ¶ 23; *c.f. Molzon v. Molzon*, 11th Dist. Ashtabula No. 2021-A-0024, 2022-Ohio-1634, ¶ 51. (utilizing abuse-of-discretion standard in civil, domestic matter referred to magistrate.) The Supreme Court did not explicitly "overrule" this well-settled standard. Nevertheless, in its order, the Court instructed this court to apply the sufficiency/manifest-weight-of-the evidence standard. We shall therefore proceed to analyze this matter under the standard announced in *Z.C. II.*

5

evidence is legally sufficient to sustain a judgment, however, a reviewing court may still determine the judgment is against the manifest weight of the evidence. *Id.* at ¶ 14. When considering a challenge to the weight of the evidence, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* An appellate court conducting this analysis must be aware "of the presumption in favor of the finder of fact." *Id.* Where the evidence is open to more than one interpretation, an appellate court must afford that interpretation which is consistent with the trial court's judgment. *Id.*

**{¶11}** In this case, as to the first prong of the test, there is no dispute that Z.C. was in the temporary custody of ACCSB for more than 12 out of a consecutive 22-month period at the time the court granted ACCSB permanent custody. Instead, Father's argument focuses on the determination that permanent placement was in Z.C.'s best interest.

**{¶12}** Specifically, Father argues that ACCSB should have done more to help engage Father; that the legal custodians of the six other children agreed to keep the children connected to each other and Father, and that the guardian ad litem ("GAL") did not recommend a grant of permanent custody. He argues, that taken together, the facts do not support the trial court's order of permanent custody. Additionally, Father argues that permanent placement is not in the best interest of Z.C. primarily due to the risk of severing his relationship with his siblings. In support, he cites *In re D.F.,* 8th Dist.

6

Cuyahoga No. 108055, 2019-Ohio-3046, which emphasized the importance of maintaining sibling relationships.

{¶13} *In re D.F.*, however, is factually distinguishable from the case at bar. Crucially, the mother in that case substantially complied with the case plan and had consistent contact with her child all throughout the process. *Id.* at ¶ 11, ¶ 38. The reviewing court noted that it was not a case in which the children were at any point out of contact with their mother. *Id.* at ¶ 38. Additionally, "[t]his family unit, when in Mother's care, is safe, happy and enjoys the company of one another. * * * The plan here was always reunification. Mother had done all the work to have her children returned to her. This family should be together." *Id.* at ¶ 54-¶ 55. In short, the mother in that case had consistent contact with her children and made substantial progress with the case plan, could meet the children's basic needs, was compliant with the mental health services, and was very bonded to her children.

{¶14} In this case, Father's actions while the children were in the custody of ACCSB support the juvenile court's conclusion that permanent placement was in Z.C.'s best interest. When Father reached out to ACCSB in March 2019, he informed them that he did not have a house large enough for all his children and he had not had contact with them for approximately three years. Throughout the pendency of the case, Father moved into a house that was under renovation but never followed through on a home visit, purportedly due to COVID-19 concerns. He had some contact with some of his children, though one of his sons declined to talk with him because the child said Father had hurt his feelings. He did not have the technical requirements to have video calls with Z.C. and declined to have telephone calls with Z.C. because they were supervised. Father also

7

stated that he wished to have visits with Z.C. but consistently maintained he did not want to be added to the case plan. He did not cooperate with ACCSB and failed to keep appointments to meet with the case worker. Even after Father was appointed counsel and was informed of the importance of being included in the case plan, he did not follow through. On the other hand, Z.C. has been with his foster family and half-brother since March of 2020 and is closely bonded with them.

{¶15} Father also argues that the court erred in granting permanent placement because the GAL did not recommend permanent placement with ACCSB; the GAL, however, was also unable to recommend placement with Father because he was not able to see them interact. The juvenile court was not convinced that placement with Father was better for the children than a grant of permanent custody to ACCSB, and in light of the evidence in the record, we discern no error.

{¶16} Finally, as Father correctly points out that, in Ohio, there is no statute providing protections for relationships between adopted children and their biological siblings. Adoption, however, does not automatically or necessarily preclude contact between an adopted child and their biological siblings. The families who have custody of six of Z.C.'s siblings have expressed a willingness to keep the children in contact. Though there was some concern expressed about their present ability to connect with Z.C., the record shows some contact between Z.C. and his siblings during the pendency of these proceedings. The juvenile court ultimately gave greater weight to the past practice of the adoptive families than Father's promise of future behavior in keeping the family together.

{¶17} After careful consideration of the record before us, we conclude the underlying judgment is supported by adequate, credible evidence. That is, the judgment

8

terminating custody is supported by sufficient evidence and is consistent with the manifest weight of the evidence.   Accordingly, Father's assigned errors are without merit.

{¶18} In light of the foregoing, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

Case No. 2022-A-0014